**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Jesse Bush,                                )
                                           )
       Plaintiff,                  )
                                           )
       v.                          )    No.
                                           )
                                           )    **JURY TRIAL DEMANDED**
Dyson, Inc., Dyson Direct, Inc.            )
                                           )
       Defendants.                 )

## Complaint

Plaintiff, Jesse Bush, through his undersigned counsel, Patterson Law Firm, LLC, for his Complaint against Defendants, Dyson, Inc., and Dyson Direct, Inc., and in support thereof, states as follows:

**The Parties**

1.    Plaintiff, Jesse Bush ("Bush"), is a resident of Kane County, Illinois.

2.    Defendant, Dyson, Inc., is an Illinois corporation with its principal place of business in Chicago, Illinois.

3.    Defendant, Dyson Direct, Inc., is a corporation organized under the laws the State of Illinois with its principal place of business in Chicago, Illinois. Upon information and belief, Dyson Direct, Inc. is a subsidiary of Dyson, Inc. organized under the laws of the State of Illinois.

4.    Dyson, Inc. and Dyson Direct, Inc. are collectively referred to as "Dyson."

**Jurisdiction and Venue**

5.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The amount in controversy exceeds $75,000, exclusive of costs and interest.

6.    Venue is properly in this District pursuant to 28 U.S.C. § 1391(b).

7.    This Court has *in personam* jurisdiction over Defendants because Defendants have purposefully availed themselves of the benefits of and protections afforded by the laws of the State of Illinois and have further established minimum contacts by operating as a corporation organized under the laws of the State of Illinois and doing business within this State.

**Facts**

8.    Bush is an African-American man.

9.    He first became employed by Dyson in or about July 2013 as a part-time customer experience specialist.

10.    In or about June 2015, he was promoted to a full-time customer service supervisor.

11.    Bush was the only black male supervisor.

12.    On August 1, 2016, Bush was terminated by Dyson because he referred to himself as a black man and for complaining about discriminatory treatment.

13.    On September 6, 2016, Bush filed a charge of discrimination with the Equal Employment Opportunity Commission, claiming discrimination based upon his race, gender, and retaliation.

14.    Shortly after June 29, 2017, Bush received a right- to-sue letter from the EEOC.

15.    Prior to March 2016, Bush had never been disciplined, received any write-ups or final warnings, or been suspended.

16.     For his 2013 annual review, Jesse was noted to be "a fast learner and is great with troubleshooting." He was also described as being "a team player and helps out on the team when needed." His managers provided the following comments:

> Jesse is a joy to have on the team. He helps out with additional tasks when needed. [H]e understands his job and wants to excel. He understands his areas of opportunity and wants to ensure that he makes changes.

17.     For his 2014 annual review, Jesse was commended for taking over management of another employee's team while she was on maternity leave and seamlessly transitioning into a support role upon her return. His managers commented as follows:

> Great year! When Jesse was on the phone from January – May he did exceptional, and excelled in his role as a POC from June until the present.

18.     In or about June 2015, Bush was promoted to a supervisor position. His immediate manager was Matt Skowron ("Skowron").

19.     In or about March 2016, Dyson hired Viola Hasler ("Hasler") as a human resources manager.

20.     Almost immediately after coming on board, Hasler began to single out Bush – the only black male supervisor.

21.     In March 2016, Hasler called Bush to her office and accused him without any basis of spreading gossip about himself.

22.     In May 2016, Bush was reprimanded for not making enough effort to prevent other supervisors from talking near his desk.

3

23.    In June 2016, Hasler called Bush a liar and scolded him after he informed her that he had no knowledge of a relationship between his director and another employee. Bush had no prior knowledge.

24.    After observing a pattern of behavior in which he was repeatedly called into Hasler's office in front of his co-workers while no other supervisors were treated similarly, Bush made a verbal complaint to Skowron about Hasler's conduct. Skowron told him to just get past it.

25.    Later that month, during a meeting with other supervisors and their managers, Bush lightheartedly referred to himself as a black man. Specifically, while asking a question during the meeting, Bush jokingly said that he is not an angry black man and was just trying to do his job. Bush's comments were not disruptive to the meeting.

26.    Following the meeting, Bush's comment found its way to Hasler. Hasler again called Bush into her office and told him he could not refer to himself as a black man because it might offend someone. When Bush – a black man – asked how he should refer to himself, Hasler simply restated that he could not call himself black.

27.    After this meeting, Bush talked to the site director, Jamie Young ("Young"). Bush informed Young that he was unhappy and felt that he was being singled out.

28.    Young told Bush not to worry. He said he and the site president were aware of Bush's comments during the meeting and did not view it as a distraction or inappropriate. Young then suggested that Bush speak with

Hasler's supervisor, Amy Basa ("Basa"). Bush discussed the matter with Basa, who stated that she would speak with Hasler.

29. Only two weeks after Bush was reprimanded for referring to himself as black, Hasler again pulled Bush into her office. This time, Skowron was also present. Bush was then questioned about whether he knew anything about agents committing fraud using his passwords. Bush had no such knowledge and informed Hasler and Skowron of the same. Bush further stated that he was disappointed in his agent and offered to assist their investigation in any way possible.

30. At the time, it was common practice for supervisors to provide agents with their passwords. In fact, managers encouraged supervisors to share their passwords because it allowed for agents to approve transactions when the supervisors were off-site for training. No company policy existed against sharing passwords and no communications were ever issued instructing supervisors not to share their passwords.

31. Later that day, Bush again asked if there was any way he could assist in their investigation into the agent's fraudulent conduct.

32. The next day, Hasler called Bush at home and told him he was suspended because she wanted to look further into his involvement. Specifically, she wanted to know why the agent had Bush's password. Bush informed her that it was an approved practice by his manager and common for supervisors to share their passwords with agents.

5

33. Bush had previously been told by Skowron that he was cleared, but Hasler told Bush the suspension would last until she confirmed that Bush's statements were true.

34. One week later, on August 1, 2016, Hasler again called Bush at home and told him that he was fired.

35. When Bush attempted to question Hasler about why he was being terminated, she did not provide an immediate response. She confirmed that they had no evidence that he knew of or was involved in the fraudulent conduct. When pressed, she stated that it was because he had shared his password with the agent. No other supervisors, however, were disciplined for engaging in the same conduct.

36. When Bush asked why he was the only supervisor being punished, Hasler said it was also because of the incident where he referred to himself as a black man. Skowron and Young were present during this phone call and consented to the actions taken by Hasler.

**Count I – Title VII (Race and sex)**

37. Bush incorporates by reference each and every of the foregoing paragraphs as though fully set forth herein.

38. Bush is an African-American male.

39. He began working for Dyson in or around July 2013. He was promoted to a supervisor in or around June 2015. Bush regularly received favorable reviews for his work and contributions to the office. Prior to March 2016, he did not receive any final warnings, write-ups, suspensions, or other disciplinary action.

6

40. In or around March 2016, Bush began to be singled out by Hasler, who was new to human resources, because he was the only black male supervisor.

41. Hasler reprimanded Bush for referring to himself as a black man. Bush is a black man.

42. Bush reported Hasler's discriminatory conduct to his supervisors. Shortly thereafter, Bush was suspended and, ultimately, terminated.

43. Two reasons were conveyed to Bush for his termination: (1) he shared his password with an agent that, without Bush's knowledge, defrauded the company, and (2) Bush had previously been warned for referring to himself as a black man.

44. It was common practice at Dyson for supervisors to share their passwords with agents and the practice was encouraged by their managers. All other supervisors at Dyson engaged in this conduct.

45. No other supervisors were disciplined.

46. The conduct of Dyson, as set forth above, constitutes unlawful discrimination against Bush on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964.

47. As a proximate result of Dyson's conduct, Bush has suffered and continues to suffer substantial damages, including but not limited to salary, bonuses, benefits, and job experience that he would have received absent Dyson's discrimination. Furthermore, Bush has incurred additional costs and expenses due to Dyson's discrimination.

48. As a further proximate result of the above-mentioned acts, Bush has suffered humiliation, mental pain, and anguish.

49. The above acts of Dyson were willful, wanton, malicious, and oppressive, justifying an award of exemplary and punitive damages in excess of the jurisdictional requirements of this Court.

**Count II – Title VII (Retaliation)**

50. Bush incorporates by reference each and every of the foregoing paragraphs as though fully set forth herein.

51. Bush is an African-American male.

52. He began working for Dyson in or around July 2013. He was promoted to a supervisor in or around June 2015. Bush regularly received favorable reviews for his work and contributions to the office. Prior to March 2016, he did not receive any final warnings, write-ups, suspensions, or other disciplinary action.

53. In or around March 2016, Bush began to be singled out by Hasler, who was new to human resources, because he was the only black male supervisor.

54. Hasler reprimanded Bush for referring to himself as a black man. Bush is a black man.

55. Bush reported Hasler's discriminatory conduct to his supervisors. Shortly thereafter, Bush was suspended and, ultimately, terminated.

56. Two reasons were conveyed to Bush for his termination: (1) he shared his password with an agent that, without Bush's knowledge, defrauded the company, and (2) Bush had previously been warned for referring to himself as a black man.

57. It was common practice at Dyson for supervisors to share their passwords with agents and the practice was encouraged by their managers. All other supervisors at Dyson engaged in this conduct.

58. No other supervisors were disciplined.

59. The conduct of Dyson, as set forth above, constitutes unlawful retaliation against Bush for reporting that he was being discriminated against based on his race and sex in violation of Title VII of the Civil Rights Act of 1964.

60. As a proximate result of Dyson's conduct, Bush has suffered and continues to suffer substantial damages, including but not limited to salary, bonuses, benefits, and job experience that he would have received absent Dyson's discrimination. Furthermore, Bush has incurred additional costs and expenses due to Dyson's discrimination.

61. As a further proximate result of the above-mentioned acts, Bush has suffered humiliation, mental pain, and anguish.

62. The above acts of Dyson were willful, wanton, malicious, and oppressive, justifying an award of exemplary and punitive damages in excess of the jurisdictional requirements of this Court.

WHEREFORE, Plaintiff, Jesse Bush, respectfully requests this Honorable Court enter judgment in his favor and against Defendants, Dyson, Inc. and Dyson Direct, Inc., and award him damages, both compensatory and punitive, in an amount to be proven at trial, as well as his reasonable attorney fees and costs, and grant such other relief as the Court deems proper under the circumstances.

Respectfully submitted,

Date: September 25, 2017

s/Kristi L. Browne
Kristi L. Browne (#6195553)
Peter J. Evans (#6312759)
Patterson Law Firm, LLC
One N. LaSalle St., Suite 2100
Chicago, IL 60602
Tel: (312) 223-1699
Fax: (312) 223-8549
kbrowne@pattersonlawfirm.com
pevans@pattersonlawfirm.com
Attorneys for Plaintiff

10